**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose JIMENEZ LOPEZ, Defendant–Appellant.**

No. 88–1422.

United States Court of Appeals, Fifth Circuit.

May 12, 1989.

Christine W. Kelso, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., and Judith M. Patterson, Atty., Regional Counsel's Office, I.N.S., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, WILLIAMS and DUHE, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In a nonjury trial, Jose Jimenez–Lopez was found guilty of illegal entry into the United States after conviction for an earlier illegal entry. The relevant statute provides that an alien who unlawfully enters the United States shall "for the first commission of any such offenses, be guilty of a misdemeanor ... and for subsequent commission of any such offenses shall be guilty of a felony...." 8 U.S.C. § 1325 (Supp. IV 1986). Jimenez now contends that the "prior commission" required to elevate his offense to a felony was not proved by properly authenticated evidence.

At trial, border patrol agent Johnston testified regarding defendant's prior illegal entry and identified a copy of a 1985 judg-

ment of conviction for illegal entry, introduced into evidence as "exhibit 3." The exhibit was a photostatic copy of a document entitled "Record of Proceedings and Judgment" and its heading indicated it was from the records of a United States Magistrate for the Southern District of California. It shows that a person named Jimenez–Lopez pleaded guilty to one count of illegal entry under 8 U.S.C. § 1325. A clerk of that court apparently stamped the document "certified a true copy" and then dated and signed it. But the signature is illegible.

Agent Johnston testified that he personally requested exhibit 3 and received it via a California border patrol agent who Johnston said procured it from the magistrate's court. Exhibit 3 was admitted over the defendant's objection. The sole issue on appeal is whether exhibit 3 was sufficiently authenticated. We find that it was, and we affirm.

*Analysis of Authentication*

Jimenez was acquitted on one count of the two count indictment. The only issue before us is his conviction on the second count. That count read:

> [O]n or about January 14, 1988, in the Western District of Texas, Defendant, Jose Jimenez–Lopez, an alien, unlawfully, willfully, and knowingly did enter the United States at a place other than as designated by Immigration Officers as a Port of Entry for aliens, after having been previously convicted of the same offense on or about August 5, 1985, in violation of Title 8, United States Code, Section 1325.

Exhibit 3 was the only evidence admitted into court to prove commission of a prior illegal entry. Prior to exhibit 3's admission, Jimenez' counsel in objecting to its admission stated: "This is not an Immigration and Naturalization Service document. It doesn't qualify under 901 or 902. There is no seal so it is not self-authenticating. Certification is not enough." The court overruled this objection.

■ We review admission of evidence only for abuse of discretion. *United States v. Eakes*, 783 F.2d 499, 506–507 (5th Cir.), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986); *United States v. Acosta*, 763 F.2d 671, 693 (5th Cir.), *cert. denied sub nom. Weempe v. United States*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985); *United States v. Perlmuter*, 693 F.2d 1290, 1292 (9th Cir.1982). Furthermore, even if abuse of discretion in the admission or exclusion of evidence is found, the error is reviewed under the harmless error doctrine. *United States v. Scott*, 678 F.2d 606, 612 (5th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982). Finally, evidentiary rulings must be affirmed unless they affect a substantial right of the complaining party. Fed.R.Evid. 103(a); *Foster v. Ford Motor Co.*, 621 F.2d 715, 721 (5th Cir.1980).

■ Certainly Jimenez has a substantial right involved in this appeal. He must be convicted under the terms of the indictment. He could not be convicted under the terms of the indictment unless the 1985 conviction was proved. Exhibit 3 and testimony as to its procurement were the only evidence offered regarding that 1985 conviction. The government argues that even if the trial court admitted evidence which was not properly authenticated it was harmless error because they introduced evidence concerning other prior illegal entries. Jimenez, however, can only be convicted under the terms of his indictment which cannot be altered except by the grand jury itself. *United States v. Chandler*, 858 F.2d 254, 256 (5th Cir.1988). Hence, harmless error analysis is inappropriate. Jimenez correctly argues that his felony conviction stands or falls on the correctness of the trial court's ruling on the admissibility of government exhibit 3.

Normally a government document is self authenticating and can be admitted under Federal Rule of Evidence 902. The government concedes, however, that Rule 902 is inapplicable in this case. Exhibit 3 was not under seal and no public officer of the magistrate court certified under seal that the document was genuine.

The government argues instead that exhibit 3 was admissible under Rule 901 which provides as follows:

*Requirement of Authentication or Identification*

(a) *General provision.*

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims.

(b) *Illustrations*

By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of witness with knowledge*

Testimony that a matter is what it is claimed to be....

(4) *Distinctive characteristics and the like*

Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances ...

(7) *Public records or reports*

Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a proported public record, report, statement, or data compilation, in any form, is from the public office where items of these nature are kept.

Fed.R.Evid. 901.

▐▌ This Court does not require conclusive proof of authenticity before allowing the admission of disputed evidence. *United States v. Lance,* 853 F.2d 1177, 1181 (5th Cir.1988); *United States v. Whittington,* 783 F.2d 1210, 1215 (5th Cir.), *cert. den.,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed. 2d 246 (1986). Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be. 901's list of illustrations is in terms illustrative only. Those means listed are not the exclusive means by which the document can be authenticated. *See Matter of Bobby Boggs, Inc.,* 819 F.2d 574, 590 (5th Cir.1987).

▐▌ In this case exhibit 3 is a document which appears on its face and by its contents to be a record of conviction of illegal entry into the United States by a magistrate's court for the Southern District of California. It was admitted into evidence on that basis. While it was not under seal, it was signed by a United States Magistrate and was certified by a clerk of the court. Without the testimony of Agent Johnston the admissibility of the document would have been doubtful. But Johnston's testimony as to the chain of custody of the photostatic copy combined with the internal indicia of reliability within the document itself justified the conclusion of the court that the document was admissible to prove its contents. Johnston was not testifying as custodian of the document. Rather, his testimony provided circumstantial evidence to support the conclusion that the document was an official record.

Jimenez argues that his case is similar on its facts to *United States v. Perlmuter,* 693 F.2d 1290 (9th Cir.1982). In *Perlmuter* the Immigration and Naturalization Service attempted to cancel Perlmuter's certification of naturalization and to convict Perlmuter of knowingly procuring naturalization in violation of law. A Los Angeles investigator from the INS testified at the trial that he contacted another INS investigator in Washington D.C. and requested a certified copy of any criminal record for Perlmuter held by the Israeli national police. The testifying investigator received a document from the Washington investigator which purported to relate Perlmuter's convictions in Israel and also received another document which purported to contain fingerprints of Perlmuter. These documents were accompanied by a certification, later found to be invalid.

In *Perlmuter* the court made a specific finding that the documents did not comply with the authentication requirements of either rule 901 or 902. But the court admitted them in evidence, apparently believing the documents presented a "aura of authenticity." On appeal, the Ninth Circuit Court found that the trial judge was correct that the certificate was invalid under

902 and that the extrinsic evidence and the testimony of the INS investigator was not enough to sustain a finding of authenticity under 901(a). The Court went on to say that while the Federal Rules of Evidence offer generous opportunity to authenticate by presentation of sufficient extrinsic evidence to support the authenticity of the document, or to admit the document under 902(3) if the document is self-authenticating, the rules offer "no third means of authentication; certainly it is not enough that the documents present an 'aura of authenticity.' Thus, the trial court abused its discretion by admitting the unauthenticated documents into evidence." *Perlmuter* at 1293.[1]

*Perlmuter* is distinguishable from the case before us on three grounds: First, the document was a record of convictions provided from Interpol. As a concurring opinion pointed out, Interpol is not an agency of the Israeli government and is not a part of the government of this country. "A record of convictions from Interpol has no more authority in the legal proceedings of the United States than records of alleged convictions that may be kept by Lloyd's of London for insurance purposes." The exhibit in question was described by the concurring judge as similar to a police "rap sheet." Whatever the use of rap sheets, "the record of convictions for the purposes of a court must come from a court itself in order to be considered reliable." *Perlmuter* at 1295 (Ferguson, J. concurring).

Second, *Perlmuter* involved records of judicial proceedings in a foreign country. The document in question was not from an actual court. In the case at hand, however, the internal characteristics of exhibit 3 showed it to be a record of the proceedings in a United States Magistrate's court. Combined with Johnston's testimony regarding its origin, there was significantly stronger evidence regarding its authenticity than there was in *Perlmuter*.

The third distinction between Perlmuter and the case at hand is that in *Perlmuter*

there was also a hearsay objection voiced at trial to the documents. The *Perlmuter* court held that there was no evidence that the INS agent who signed the conviction report had firsthand knowledge of the convictions. The court further held that there was a probability of multiple levels of hearsay in the situation and hence the exhibit did not fit within the public records hearsay exception, Federal Rule of Evidence 803(8). The hearsay objection was an independent, separate, and sufficient reason to find the document inadmissible.

██ Inescapably there are hearsay elements in Johnston's testimony regarding the document's origin. There was, however, no hearsay objection to his testimony. Federal Rule of Evidence 103(a)(1) requires a "timely objection or motion to strike ... stating the specific ground of objection, if the specific ground is not apparent from the context...." Jimenez' counsel stated when objecting "This is not an Immigration and Naturalization Service document. It doesn't qualify under 901 or 902. There is no seal so it is not self-authenticating. Certification is not enough." It was certainly not apparent from the context that Jimenez' counsel was objecting to Johnston's testimony as including hearsay. A trial court judge must be fully appraised of the grounds of an objection. *New Amsterdam Cas. Co. v. W. D. Felder & Co., Inc.,* 214 F.2d 825, 829 (5th Cir.1954). A loosely formulated and imprecise objection will not preserve error. *United States v. Arteaga–Limones,* 529 F.2d 1183, 1190 (5th Cir.), *cert. den.,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976). We would stretch too far to find a hearsay objection here. The objection was not made, and the issue is not before us on appeal.

Jimenez cites other cases as analogous to his own. *United States v. Beason,* 690 F.2d 439 (5th Cir.1982), *cert. denied,* 459 U.S. 1177, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983); *United States v. Mekjian,* 505 F.2d 1320, 1326 (5th Cir.1975); *Mullican v.*

---

**1.** It is useful to note that the Ninth Circuit appears to require exceedingly strict compliance with the authenticity rules. *Perlmuter* at 1292. This appears to be in contrast to this Circuit's somewhat more restrained view of the authenticity rules. See cases cited *supra.* Hence the standard which the Ninth Circuit in *Perlmuter* applied arguably was different.

*United States,* 252 F.2d 398 (5th Cir.1958). These cases, however, do not advance his argument. Both *Mekjian* and *Mullican* were decided before the effective date of the Federal Rule of Evidence in question. *Beason* involved documents which were self-authenticating. All three cases established the general rule that only the official custodian of a government record may certify a true and correct copy thereof for purposes of authentication. They do not delineate what combination of circumstantial evidence will serve to authenticate a document under Rule 901. That is the issue in this case.

This case involved the chain of custody of a photostatic copy which the government proved came from the magistrate's court in California via an INS agent in California and was then received by Agent Johnston. Jimenez was linked to the conviction in California by his fingerprints. While the admissibility of exhibit 3 was questioned, the district court concluded that it was authenticated. In the absence of a showing to the contrary, we will not assume that the document was altered by the government. *See United States v. Mojica,* 746 F.2d 242, 245 (5th Cir.1984) ("[W]e presume that the government did not deliberately alter the scene before photographing it to cause the photograph to misrepresent the facts.")

The origin of exhibit 3 was confirmed by Johnston's testimony. Johnston testified that he was told by the agent that it came from the United States Magistrate's court. His testimony added substantially to the authorization of exhibit 3. There was sufficient circumstantial evidence arising from Johnston's testimony and the internal evidence in the document itself for the district court to conclude that the document was authentic. Jimenez makes no other challenges to his conviction, and hence we affirm.

AFFIRMED.