**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-11165

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

KENNETH WATKINS

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Following a jury trial, Defendant-Appellant Kenneth Watkins was convicted of conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II) (Count Two). Complaining of certain evidentiary rulings and insufficient evidence to support the jury verdict, Watkins appeals.

I

Taylor County Deputy Sheriff Robert Ramirez stopped a tractor-trailer near Abilene, Texas. The trailer was loaded with two cars: a maroon mini van

and a black sport utility vehicle ("SUV"). Deputy Ramirez approached the cab and informed Steven Aaron ("Aaron"), the driver, that a chain was dragging against the highway causing sparks. Deputy Ramirez's suspicions were raised by Aaron's nervousness and various inconsistencies in his answers to basic questions. After running a background check that revealed that Aaron had several arrests for narcotics trafficking, he asked for and received Aaron's consent to search the tractor-trailer and the two cars.

At this point, Aaron informed Deputy Ramirez that "Kenny," Defendant-Appellant Kenneth Watkins ("Watkins"), was also in the cab. Watkins was in the sleeper portion of the cab with the curtains shut. When Deputy Ramirez called out to Watkins, he appeared and produced identification. Deputy Ramirez informed Watkins that Aaron had given consent to search the tractor-trailer and asked Watkins to step outside.

Two special agents and a police dog arrived to help Deputy Ramirez with the search. The dog alerted to the odor of narcotics in the SUV. Inside the SUV, the agents found a black duffel bag. Inside the bag, they found a white box that contained several green packages wrapped in tape. The agents field-tested the white powdery substance in the packages and found it to be cocaine. Deputy Ramirez mirandized Aaron and Watkins and placed them under arrest for narcotics distribution. Lab testing confirmed that the green packages contained approximately six kilograms of cocaine.

Later that day, Special Agent Paul Cummings of U.S. Immigrations and Customs Enforcement ("Agent Cummings") conducted two interviews with Watkins. The first interview lasted about 20 to 25 minutes before Agent Cummings ended the interview because he thought Watkins was being deceptive. Shortly thereafter, Watkins was interviewed again. During the second interview, Watkins admitted placing the black bag in the back of the SUV and knowing it contained drugs. He also told Agent Cummings that he had been

on two previous drug runs, one in late 2007 and one in early 2008. Watkins said that Aaron was the one planning the operation and that he had talked to Aaron about learning how to drive a commercial vehicle because he would be paid more as a driver. Agent Cummings testified to these admissions during trial.

The police also recovered two cell phones from Watkins and one from Aaron. The phones showed numerous calls and text messages to one another, and to other alleged members of the conspiracy. The Government also provided proof of numerous wire transfers made by and to Watkins from late 2007 through April 2008. Several of the transfers were sent to either towns in Mexico or towns near the Mexican border.

At trial, Watkins testified in his own defense, maintaining that he had been in Las Vegas deejaying a party, that he was just hitching a ride back to Atlanta with Aaron, and that he had no knowledge of the drugs. He denied ever making a confession to Agent Cummings. Aaron, who pled guilty, was not called to testify in Watkins' trial. The jury convicted Watkins on both counts.

## II

### A

Watkins contends that the admission of certain bad acts testimony was in violation of Rule 404(b) and denied him a fair trial. Watkins argues that the evidence of his admission to police that he had been involved in two prior drug runs to pick up and deliver marijuana was evidence of "other acts," not evidence "intrinsic" to the offense of conspiracy to distribute cocaine. Thus, he argues, the district court erred by not treating this evidence as extrinsic.

Because Watkins never raised an argument that the testimony regarding the prior drug runs was extrinsic during trial, we review for plain error. FED. R. EVID. 103. To show plain error, Watkins must show a forfeited error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 129 S.Ct. 1423, 1429 (2009).

Evidence of bad acts is "intrinsic" to a charged crime when the evidence of the other act and evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged. *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (citing *United States v. Stovall*, 825 F.2d 817, 825 (5th Cir. 1987)); *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982). Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the appellant became a member. *See United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985).

Because of the many similarities between the crime of conviction and the two previous drug runs, we find no error in the district court's determination that the evidence of the previous runs was relevant to establish how the conspiracy was structured and operated, and thus intrinsic. All of the conduct involved a nearly identical modus operandi: the same co-conspirators, the same tractor-trailer transporting vehicles carrying drugs, and the same pick-up and destination cities. In all three runs, Watkins and Aaron picked up large quantities of drugs in Phoenix and transported them to Atlanta. Watkins admitted that the previous runs were part of his "training" to learn how to be a driver. Moreover, the two prior drug runs were in temporal proximity, having occurred several months before the offense of conviction. Given these numerous similarities, the district court could have easily concluded that there was a single conspiracy to transport narcotics and that evidence of the prior runs was intrinsic to the charged conduct. *See Nichols*, 750 F.2d at 1265; *United States v. Nichols*, 741 F.2d 767, 772 (5th Cir. 1984).

Nor are we convinced by Watkins' argument that the same two men, using the same equipment and smuggling techniques and acting in close temporal proximity, were involved in two independent conspiracies, one involving marijuana and one involving cocaine. *See United States v. Gonzalez*, 491 F.2d

1202, 1206 (5th Cir. 1974) (finding a single unified conspiracy to unlawfully sell narcotics even though some of the sales involved cocaine and some involved heroin). When all of the conduct aims at a common goal and involves the same techniques and participants, we generally find a single unified conspiracy. *See United States v. Becker*, 569 F.2d 951, 960 (5th Cir. 1978) (noting that "the existence of a common goal, the nature of the scheme, and an overlapping of participants in the various dealings" are the principal factors for determining if a unified conspiracy exists); *see also Nichols*, 741 F.2d at 772 (concluding that the defendant "participated in a single conspiracy to commit multiple violations of the drug control law [because the] . . . conspiracy . . . had an essential continuity in personnel, a consistency in method, an identical base of operation, and a singleness of unwavering purpose"); *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir. 1978) (holding that second indictment for drug conspiracy violated double jeopardy because the fact that "the participants shared a continuing, common goal of buying and selling marijuana for profit; the operations of the conspiracy followed an unbroken and repetitive pattern; and the cast of conspirators remained much the same" established the existence of a single, unified conspiracy).

Furthermore, contrary to Watkins' arguments, the district court did not err in allowing the Government to introduce evidence of prior marijuana transport in prosecuting a conspiracy to transport cocaine. It is well established that where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof. *See, e.g.*, *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996) (ruling that the district court properly admitted, as intrinsic evidence, defendant's participation in non-pled acts); *United States v. Quesada*, 512 F.2d 1043, 1046 (5th Cir. 1975) (explaining that the Government, in proving a conspiracy, is not limited to overt acts alleged in the indictment and that the prosecution "may show other acts of the conspirators

occurring during the life of the conspiracy"). Because all of the runs were part of a single conspiracy, the district court did not err in admitting evidence of prior drug runs involving marijuana as intrinsic evidence even though the charged conduct involved cocaine. *See Gonzalez*, 491 F.2d at 1206.

The district court's determination that the testimony regarding prior marijuana runs was intrinsic to the Government's proof and not subject to Rule 404(b) was not plain error. Since we do not find plain error in the determination that the evidence was intrinsic, Watkins' arguments that the Government failed to give proper notice that it planned to use the evidence or otherwise meet the requirements of Rule 404(b) are unavailing. If evidence is intrinsic, it simply does not implicate the requirements of Rule 404(b).

B

Watkins contends that the district court erred in overruling a hearsay objection to part of Officer Cummings' testimony. Watkins argues that the testimony, which referred to a statement another officer made to Agent Cummings about what Watkins' co-conspirator had told him regarding Watkins' involvement in the narcotics trafficking, was not merely hearsay, but double hearsay and should not have been allowed.

When an objection is properly made, we review a district court's evidentiary rulings for an abuse of discretion. *See United States v. Powers*, 168 F.3d 741, 748 (5th Cir. 1999).

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 803. Testimony not used to establish the truth of the assertion, however, "does not fall under the proscriptions against the use of hearsay." *United States v. Vizcarra-Porras*, 889 F.2d 1435, 1439 (5th Cir. 1989), *cert. denied*, 495 U.S. 940 (1990).

6

Agent Cummings testified that he found Watkins to be nervous during his initial interrogation and attributed this nervousness to the fact that Watkins was being deceptive and trying to hide his true criminal conduct. On cross examination, Agent Cummings admitted that Watkins' nervousness may have resulted from the fact that he had no previous criminal record and thus was not comfortable being interrogated. The Government sought to rehabilitate Agent Cummings' testimony by eliciting other reasons, aside from Watkins' nervousness, for why he found Watkins to be deceptive. Agent Cummins testified:

> I was going to state that . . . at that time Mr. Aaron had been cooperating and had made a statement on the way to the . . . Sheriff's office to Mr. Laird, . . . and that was where a majority of the information that I had—based on what he [Aaron] had said and his client's [Watkins's] involvement . . . in the narcotics trafficking.

Officer Cummings testified that someone present at the arrest told him what Watkins and Aaron said in order to establish that he had a basis of comparison from which to assess the truthfulness of Watkins' responses during the interrogation, and thus for concluding that Watkins was being deceptive in his responses. Officer Cummings did not testify as to the truth of these statements.

Because the testimony was offered to rehabilitate Officer Cummings' assertion that Watkins appeared deceptive during interrogation rather than for the truth of the assertion, it is not hearsay. *See* FED. R. EVID. 403; *United States v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981) ("Using an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule.").

C

Watkins also contends that the district court abused its discretion when it admitted Government Exhibit 41, a rental application. The Government

offered the rental application to show Watkins had listed an alleged member of the conspiracy as his present landlord in order to contradict Watkins' prior testimony during which he denied that an alleged member of the conspiracy was his landlord or that he had so represented. The district court admitted the rental application and gave a limiting instruction that it was being offered only to contradict a prior statement made by the witness. Watkins argues that there was no basis for admitting the document, that the document was hearsay, and that the document was not properly authenticated.

It is well established that after a witness denies making a statement during cross examination, evidence may be introduced to prove the statement was made. FED. R. EVID. 613; *United States v. Devine*, 934 F.2d 1325, 1344 (5th Cir. 1991). As is proper in this circumstance, the district court gave a limiting instruction that the application was offered only to show that Watkins made a prior inconsistent statement. *See Sisto*, 534 F.2d at 623.

Watkins' hearsay challenge also fails. As discussed above, when evidence is offered for some purpose other than the truth of the matter asserted therein, it is not hearsay. *See* FED. R. EVID. 803; *United States v. Enstam*, 622 F.2d 857, 865 (5th Cir. 1980).

Finally, we find sufficient evidence of the exhibit's authenticity to allow for its admission. In deciding questions of authenticity, we do not require conclusive proof of authenticity before allowing the admission of disputed evidence. *See United States v. Jimenez-Lopez*, 873 F.2d 769, 772 (5th Cir. 1989). FED. R. EVID. 901 merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be. *Id.* The rental application had Watkins' name, date of birth, address, and signature on it. These facts provide sufficient evidence of authenticity to allow the district court to admit the rental application for the jury's consideration. *See In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008).

D

Watkins additionally challenges the sufficiency of the evidence supporting his conviction, arguing that the evidence merely placed him at the scene and did not support a reasonable inference that he had any involvement in the drug conspiracy.

In determining the sufficiency of evidence to sustain a verdict upon denial of a motion for acquittal, we consider the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Holley*, 23 F.3d 902, 908 (5th Cir. 1994). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc).

Count One[1] charged Watkins with conspiring to distribute and to possess with the intent to distribute more than five kilograms of a mixture and substance containing a detectable amount of cocaine. The elements of the offense are (1) an agreement with one other person to distribute or to possess with the intent to distribute at least five kilograms of cocaine; (2) defendant's knowledge of the agreement; and (3) defendant's voluntary participation in that agreement. 21 U.S.C. § 846; *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008). Each element may be inferred from circumstantial evidence; that is, the "agreement may be inferred from a 'concert of action'" and "[k]nowledge of a conspiracy and voluntary participation . . . may be inferred from a 'collection of circumstances.'" *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994) (citing

---

[1] Watkins limits his discussion of sufficiency of the evidence to Count One of the indictment. Thus any arguments as to Count Two are waived. *See, e.g.*, *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (issues inadequately briefed on appeal are waived).

*United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993); *United States v. Natel*, 812 F.2d 937, 940 (5th Cir. 1987)).

After reviewing the evidence presented at trial, we hold that the evidence was sufficient to meet each of the elements and therefore sufficient to sustain the verdict. Most obviously, Watkins was found with the cocaine. As Watkins correctly notes, mere presence, standing alone, is not sufficient to prove guilt. *See United States v. Maltos,* 985 F.2d 743, 746 (5th Cir. 1992). In this case, however, Watkins' presence is not the only evidence of his knowing participation in the conspiracy.

Watkins admitted to Agent Cummings that he participated in the conspiracy. Watkins testified at trial, contrary to his prior admission, that he simply was hitching a ride with Aaron on the trip to Atlanta and had no knowledge of the drugs. The jury was entitled to reject this new story and to believe, as Watkins had previously admitted, that he had been part of the conspiracy. *See United States v. Roberson*, 6 F.3d 1088, 1093 (5th Cir. 1993), *cert. denied*, 510 U.S. 1182 (1994).

In concluding that Watkins had knowledge, the jury could also properly rely on the implausibility of Watkins' explanation that he had to hitch a ride with Aaron because he was unable to find a flight from Las Vegas to Atlanta. *Casilla*, 20 F.3d at 606 (recognizing "that a less than credible explanation [for presence in vehicle transporting drugs] may be part of the overall circumstantial evidence upon which the jury can infer guilty knowledge") (internal citation omitted); *see also United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998) (same).

Furthermore, the Government introduced numerous money orders showing Watkins had sent money to various people in towns near the Mexican border and that he had received money while in Phoenix. The Government also presented numerous text messages and phone calls between Watkins and other

members of the conspiracy. Although these facts taken alone may have an innocent explanation, taken together, as evidence of a "concert of action," they demonstrate Watkins' knowing and voluntary participation in the conspiracy. *See United States v. Dean*, 59 F.3d 1479, 1486 (5th Cir. 1995) ("Acts which are not per se unlawful lose that character when cumulatively viewed as the constitutional elements of a conspiracy.").

Given the amount of inculpatory evidence in the record, we cannot say that the jury was irrational in finding Watkins guilty of knowing, voluntary participation in the narcotics conspiracy alleged in this indictment.

III

For the foregoing reasons, we AFFIRM.