# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2011

Lyle W. Cayce
Clerk

No. 09-10850

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COLIN DALAWN JACKSON, also known as Cory,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, DeMOSS, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The petition for rehearing is GRANTED.  We WITHDRAW our previous opinion in this matter, *United States v. Jackson*, 625 F.3d 875 (5th Cir. 2010), and substitute the opinion that follows.  Although we arrive at the same result as in our earlier opinion, this opinion reflects substantial changes to clarify and further expound that our evidentiary and constitutional analyses are two separate and distinct considerations:

Colin Dalawn Jackson ("Jackson") appeals his conviction and sentence, following a jury trial, for conspiring to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. Jackson primarily argues that the district court erred in admitting into evidence two notebooks

No. 09-10850

alleged to have been prepared by Jackson's coconspirator. The notebooks were admitted through the testimony of an investigating officer who received them from the coconspirator—without any accompanying statement—during a proffer session that failed to produce a plea bargain. The coconspirator did not testify or otherwise authenticate the notebooks, but they, and the testimony introducing and interpreting them, purportedly show the quantity of cocaine the coconspirator distributed to Jackson. Jackson contends that admitting the notebooks, and the investigating officer's testimony pertaining thereto, violated his rights under the Confrontation Clause of the Sixth Amendment; that the notebooks and testimony constitute hearsay; and that the notebooks lacked sufficient authentication. We hold that because the notebooks were not adequately authenticated, the government has not met its burden of showing that the notebooks were nontestimonial business records; that the district court erred in admitting the notebooks into evidence at trial; that this error violated Jackson's rights under the Confrontation Clause; and that the error was not harmless. We further hold that the evidence, absent admission of the notebooks, was not constitutionally insufficient under *Jackson v. Virginia*, 443 U.S. 307 (1979), to sustain Jackson's conviction. We therefore vacate the district court's judgment of conviction and sentencing and remand for further proceedings not inconsistent with this opinion.

I.

A federal grand jury indicted Jackson on April 22, 2008, on a single count of conspiring with Arturo Valdez ("Valdez") and other known and unknown persons, beginning on or about December 1, 2006 and continuing through August 1, 2007, to possess with intent to distribute more than five kilograms of cocaine. The evidence at trial included the following: Officer Christopher Hight, a Dallas police officer and task force officer of the Drug Enforcement Administration (DEA), testified that he was involved in surveillance and

2

interception of communications concerning various drug cartels, including a drug-trafficking organization headed by one Juan Reyes-Mejia. Hight testified that he and other officers had identified a cell operating within this organization, headed by Arturo Valdez. Valdez worked as a cocaine distributor in the larger drug-trafficking organization, collected money from the sale of cocaine that he transferred to couriers for transport to Mexico, had customers of his own, and was a trusted member of the drug-trafficking cartel.

Wiretap surveillance disclosed multiple conversations that Valdez had with an individual identified in the phone conversations as "Cory." Hight testified that he became familiar with Cory's voice over the course of the surveillance and, having subsequently spoken with the defendant, Hight testified that "Cory's" voice was that of the defendant, Mr. Jackson. The jury heard several recordings of the phone conversations between Valdez and "Cory," and Valdez and other persons, which Hight interpreted for the jurors as reflecting plans to engage in various cocaine and other narcotics transactions.

In August 2007, a task force arrested over 30 individuals involved in wide-ranging alleged drug-trafficking conspiracies. Valdez was arrested by DEA agents on August 16, 2007. Apparently seeking to work out a plea agreement and obtain leniency at sentencing, Valdez agreed to a proffer session with law enforcement concerning his knowledge of the drug-trafficking conspiracy. During that session, Valdez and his attorney produced, without comment as far as the record is concerned, two notebooks to Officer Hight containing 78 pages of handwriting, with numbers, notations, and names. Certain lines of text in the notebooks appear to be names or abbreviations for names. The names "Cory," "Corey" and "Cor." appear in several places in the notebooks; Officer Hight testified that these writings identify Jackson. Alongside and beneath several of the alleged references to Jackson are only various numbers. The government's witness testified, and the government asserted in its closing argument, that

No. 09-10850

these numbers reflect payments and amounts of cocaine, totaling approximately 350 kilograms, that were given to Jackson in the course of a conspiracy to possess and distribute cocaine.

The government introduced the notebooks at trial solely through the testimony of Officer Hight, who twice stated that his analysis of them was "based on [his] experience as an officer and nothing from what was obtained from Mr. Valdez." Officer Hight further testified why drug traffickers often keep ledgers, and he explained the various entries in the ledgers that he interpreted as representing cocaine transactions involving Jackson. He testified that he believed the numbers in the notebooks reflect quantities of cocaine, rather than marijuana, because the numbers are consistent with information the police had gathered through telephone surveillance. Hight also stated that the ledgers' references to "Nove" and "Nov." are likely references to Noe Godines, another participant in the drug conspiracy. Hight testified at length concerning the notebooks' contents, interpreting various numbers and calculations for the jury.

At trial, Jackson objected to admission of the notebooks on Sixth Amendment, hearsay, and authentication grounds. These objections were overruled, and the jury found Jackson guilty of one count of conspiring to possess with intent to distribute more than five kilograms of cocaine.[1] Jackson has timely appealed to this Court, arguing the same ground asserted in his objection to the notebooks before the district court.

II.

The government argues that the notebooks are nontestimonial business records that by their nature do not offend the Confrontation Clause. Alternatively, the government contends that the notebooks are nontestimonial statements made by a coconspirator during the course and in furtherance of a

---

[1] Jackson's 235-month prison sentence was based largely on drug-quantity calculations made using information in the drug ledgers supplied by Valdez and admitted at trial.

No. 09-10850

conspiracy. The threshold question before us is whether the notebooks said to be drug ledgers were properly admitted as a business record or coconspirator statement in furtherance of a conspiracy, which in turn requires us to determine whether they were adequately authenticated to be what they were purported to be. *See United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993).

This question arises from *Crawford v. Washington*, in which the Supreme Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004). However, in describing the class of "testimonial" statements implicating Sixth Amendment rights, the Court has noted that business records ordinarily fall outside this category. *Id.* at 56; *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2539–40 (2009). In general, "after *Crawford*, business records are not testimonial in nature and their admission at trial is not a violation of the Confrontation Clause."[2] *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007). The same is generally true of coconspirator statements made during the course and in furtherance of a conspiracy. *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005); *Crawford*, 541 U.S. at 56.

Review of a trial court's evidentiary rulings is for abuse of discretion, subject to harmless error review. *United States v. Jimenez-Lopez*, 873 F.2d 769, 771 (5th Cir. 1989). "A trial court abuses its discretion when its ruling is based

---

[2] We recognize, of course, that there may be exceptions to this general observation because the Confrontation Clause, as a constitutional right, cannot be circumscribed by merely invoking the evidentiary rules of hearsay. For example, although "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status, . . . that is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Melendez-Diaz*, 129 S.Ct. at 2538. Indeed, "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 2539–40. That is, business records are not *per se* nontestimonial, but they are *generally*.

No. 09-10850

on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (internal citations omitted). Applying the foregoing standard, we conclude that the district court erred in admitting the notebooks given to Officer Hight by Arturo Valdez because they were not adequately authenticated. The notebooks fall outside of the business records and coconspirator statement exceptions to the hearsay rules.

A.

Although not in itself determinative in the context of this case, we first address whether the notebooks were properly authenticated as business records.[3] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). "A proponent may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (internal citations omitted). "[T]his Court does not require conclusive proof of

---

[3] Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

FED. R. EVID. 803(6).

No. 09-10850

authenticity before allowing the admission of disputed evidence. . . . Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *Jimenez-Lopez*, 873 F.2d at 772. The standard for authentication is not a burdensome one. *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009). However, the government has failed to meet it in this case.

Although we have not spelled out the precise contours of trustworthiness necessary to authenticate drug ledgers, we have upheld the authenticity of drug ledgers as business records where (1) the ledgers were found in the home of a known drug trafficker, and the government's witness testified (2) that he worked for the drug trafficker who allegedly created the ledgers; (3) that the ledgers resembled those which the drug trafficker maintained; and (4) that the handwriting on the ledgers was similar to the drug trafficker's handwriting. *Arce*, 997 F.2d at 1128.

This case, however, is distinguishable in critical ways. Although there is no dispute that Mr. Valdez is a known drug trafficker, the ledgers were not found in Valdez's home; indeed, they were produced by Valdez at a proffer session, under circumstances that raise questions in and of themselves. Officer Hight conceded that Valdez's motive in turning over the ledgers was to obtain a benefit for himself. We have no information in the record to indicate that Valdez told Officer Hight that he was the recorder of the ledgers. The record thus does not reflect whether the ledgers were prepared by someone with knowledge of the transactions they supposedly record, or whether they record transactions at all. The ledger entries do not include any indication of the term "cocaine" and thus do not facially convey that they are applicable to the conspiracy charged. There are no dates recorded on the ledgers other than a lone reference in each to February 9 (without a year). No handwriting analysis

7

was performed on the notebooks, and no member of the drug-trafficking organization testified relating to their trustworthiness.

For his part, Officer Hight testified that he was not able personally to vouch for the credibility of any entries in the ledgers. Although he testified generally that he believed numbers in the notebooks represent quantities of cocaine because they are consistent with information he gathered from intercepted phone calls, Officer Hight did not connect any specific numbers recorded in the ledgers with amounts of cocaine that he had heard discussed. He even acknowledged that the events recorded in the ledgers could have taken place at times outside the course of the relevant drug-trafficking conspiracy.

We do not overlook that the trial judge exercises broad discretion in ruling on the admissibility of evidence. *United States v. Veytia-Bravo*, 603 F.2d 1187, 1189 (5th Cir. 1979). But here the district court gave no reasons for its decision to admit the notebooks; it simply admitted the ledgers without comment. As the foregoing discussion makes clear, there is very little support for qualifying these ledgers as admissible business records. Indeed, the government has failed to satisfy virtually all of the authentication requirements with respect to the alleged drug ledgers, and the district court has said nothing. Thus satisfied that the district court's assessment of the evidence was incorrect, we conclude that admission of the notebooks under the business records exception was error.

B.

Like business records, statements made by a coconspirator during the course and in furtherance of a conspiracy fall within a recognized exception to the hearsay rules. FED. R. EVID. 801(d)(2)(E). Such statements "are by their nature generally nontestimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination." *Holmes*, 406 F.3d at 348; *see also Crawford*, 541 U.S. at 56. As with business records, documents purporting to be the statements of a coconspirator made in the course

No. 09-10850

and in furtherance of a conspiracy must be authenticated as such in order to be admissible.

Whether the notebooks represent coconspirator statements made during and in furtherance of a conspiracy depends, in significant part, on whether Valdez made those records in the course of his drug-trafficking enterprise. We have already found the evidence insufficient for authentication on these grounds. Specifically, we explained above that Officer Hight testified he was not able to vouch for the credibility of any entries in the ledgers and acknowledged that the events recorded therein could have taken place at times outside the course of the relevant drug-trafficking conspiracy. Given this lack of predicate, we hold there is not a sufficient basis to admit the notebooks as coconspirator statements in furtherance of a conspiracy.

## C.

Thus, we have decided that the district court erred in allowing the notebooks into evidence as a business record or as a statement of a coconpirator during the course and in furtherance of a conspiracy—the only grounds asserted by the government to counter Jackson's Sixth Amendment objection. But this holding does not conclude our discussion. Because the standard for harmless error turns on whether the district court's error was only evidentiary or, more seriously, constitutional, we must proceed to the next question: whether the district court's admission of the notebooks violated Jackson's Sixth Amendment right to confront Valdez.

## III.

"[T]he Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him." *United States v. Gonzalez*, 436 F.3d 560, 576 (5th Cir. 2006).

9

No. 09-10850

Through Officer Hight, the government plainly introduced the notebooks to prove the truth of the matter asserted: Jackson's transacted cocaine deals with Valdez. Valdez did not appear at trial, was not shown to be unavailable for trial, and was not cross-examined. Jackson's Confrontation Clause claim thus turns on whether the notebooks procured from Valdez were testimonial as presented to the jury.

It is the government's burden to show the admissibility of its evidence. *See United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) ("The proponent has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met."); *see also, e.g.*, *United States v. Elashyi*, 554 F.3d 480, 503 (5th Cir. 2008) (addressing admissibility of coconspirator statements); *United States v. Wells*, 262 F.3d 455, 461 (5th Cir. 2001) (addressing admissibility of business records). Similarly, the government bears the burden of defeating Jackson's properly raised Confrontation Clause objection by establishing that its evidence is nontestimonial. *See United States v. Arnold*, 486 F.3d 177, 192 (6th Cir. 2007) (en banc) (holding that "the government ha[d] met its burden of proving that [the statements in question] were nontestimonial").[4]   *Cf. Melendez-Diaz*, 129 S.Ct. at 2540 ("[T]he

---

[4] Judge Moore, writing in dissent in *Arnold*, discussed in further detail the foundation for the principle that the government bears the burden of proving the nontestimonial nature of statements to which the defendant objected at trial:

> It is clear that before *Crawford* the government bore the burden of proving the admissibility of statements under the Confrontation Clause. *Ohio v. Roberts*, 448 U.S. 56, 74–75 (1980) ("As with other evidentiary proponents, the prosecution bears the burden of establishing" that a witness is constitutionally unavailable); *Idaho v. Wright*, 497 U.S. 805, 816 (1990) (recognizing that government has the burden of establishing sufficient indicia of reliability). Nothing in either *Crawford* or *Davis* states, or even hints, that the Supreme Court intended to alter this allocation of burdens. The inescapable conclusion, then, is that post-*Davis*, the government retains the burden of defeating, by preponderance of the evidence, a defendant's Confrontation Clause challenge. This means that the government must establish facts showing that the proffered statements are nontestimonial . . . .

10

No. 09-10850

Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court."). As we explain below, the government has failed to carry this burden of demonstrating that the notebooks were not testimonial.

We have earlier held that the notebooks at issue were improperly admitted into evidence as business records and interpreted for the jury by a government witness. Although Officer Hight had no independent knowledge of the authenticity of the records, he explained to the jury that the notebook entries represent the real-time records of a known drug dealer documenting his cocaine transactions with Jackson, whose alias appears in the notebooks at certain places. On the record before us, the notebooks, accompanied by Officer Hight's testimony, constitute the "functional equivalent" of Valdez's own "*ex parte* in-court testimony" against Jackson as having done drug business with Valdez. *Melendez-Diaz*, 129 S.Ct. at 2531 (quoting *Crawford*, 541 U.S. at 51).

Because there was no proof that these "business records" were authentic,

---

*Id.* at 213–14 (Moore, J., dissenting) (internal citations modified). Although Judge Moore was writing before the Supreme Court decided *Melendez-Diaz*, her analysis—and the majority's allocation of burden on the government—holds equally true today. As with *Crawford* and *Davis*, nothing in *Melendez-Diaz* "states, or even hints, that the Supreme Court intended to alter this allocation of burdens." *Id.*

Similarly, we find nothing in the Court's most recent Confrontation Clause decision, *Michigan v. Bryant*, --- S.Ct. ----, 2011 WL 676964 (Feb. 28, 2011), to cast doubt upon this premise. That case, like *Davis*, involved police interrogation in the aftermath of a crime; documentary evidence was not at issue. Nevertheless, the case is instructive in that the Court conducted an "objective" inquiry "to determine whether the 'primary purpose' of [the] interrogation [was] 'to enable police assistance to meet an ongoing emergency.'" *Id.* at 10. That is, the Court asked whether the evidence was sufficient to show the *non*testimonial nature of the statements at issue—not whether the defendant had proven them to be testimonial. Assuming arguendo that the Court envisioned a completely neutral allocation of burdens (an intent that we do not read into the Court's opinion), doing so would necessarily rest upon the assumption that courts will be able to ascertain from the record "the circumstances in which the encounter occurs and the statements and actions of the parties." *Id.* By contrast, as our discussion of authenticity reveals, the record before us does not lend itself to a determination as to the circumstances in which the relevant statements in this case (i.e., the drug ledger entries) were made.

11

No. 09-10850

the ledgers' entries become merely statements, made at an unknown time and conveyed at a proffer session, that relate (through Officer Hight's translation for the jury) the very testimony that Valdez "would be expected to provide if called at trial."[5]   *Melendez-Diaz*, 129 S.Ct. at 2532.  In other words, the notebook entries "do precisely *what a witness does* on direct examination."  *Davis v. Washington*, 547 U.S. 813, 830 (2006).  Furthermore, the government has failed to establish that these unauthenticated notebook entries were in fact *not* "made under circumstances which would lead an objective witness reasonably to believe that [they] would be available for use at a later trial."[6] *Melendez-Diaz*, 129 S.Ct. at 2531 (quoting *Crawford*, 541 U.S. at 52).  It has thus failed to meet its burden of establishing that the "drug ledgers" in this case are nontestimonial.

Thus it is clear that, as presented to the jury in this case, the ledgers are

---

[5] When we speak of authenticity, it should not be interpreted that we are applying the reliability standard of *Ohio v. Roberts*, 448 U.S. 56 (1980), which was rejected by *Crawford* as the touchstone for determining whether evidence is testimonial.  *See* 541 U.S. at 61 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' . . .  To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but . . . [i]t commands . . . that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.").

In *Crawford*, the Court was referring to reliability with respect to the veracity of the statements at issue.  We have evaluated reliability in a different context, considering not whether the evidence in question is truthful, but whether it is the category of evidence its proponent claims.  We have concerned ourselves not with whether Valdez's notebook entries accurately reflect the details of cocaine sales to Jackson, but instead with whether those entries are business records or coconspirator statements in furtherance of a conspiracy—that is, whether they are what their proponent purports them to be. The reliability for authenticity of a document, as here, is quite distinct from the reliability for truthfulness of its contents.

[6] We repeat that the ledgers' lack of authenticity is not determinative of our constitutional inquiry.  We note, however, the Supreme Court's recent pronouncement that in determining whether the primary purpose of a statement is to "creat[e] an out-of-court substitute for trial testimony[,] . . . standard rules of hearsay, designed to identify some statements as reliable, will be relevant."  *Bryant*, 2011 WL 676964 at *9.  As the Court explained in *Bryant*, the business records and coconspirator statement exceptions to the hearsay rules "rest on the belief that certain statements are, by their nature, made for a purpose other than use in prosecution."  *Id.* at *11 n.9.

12

No. 09-10850

testimonial evidence that violates the Confrontation Clause.

IV.

Having concluded that the admission of the notebooks was an abuse of discretion that violated Jackson's Confrontation Clause rights, we turn now to whether this error was harmless. For the reasons that follow, we hold that the error was not harmless beyond a reasonable doubt.

"A defendant convicted on the basis of constitutionally inadmissible Confrontation Clause evidence is entitled to a new trial unless it was harmless in that 'there was [no] reasonable possibility that the evidence complained of might have contributed to the conviction.'" *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)) (internal citations omitted). "The government bears the burden of establishing the error is harmless beyond a reasonable doubt," *id.*, and in doing so, "it is not enough to negate an effect on the outcome of the case." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004). Here, "because the government's closing argument relied on [the] very evidence" that offends the Confrontation Clause, "[w]e cannot see how the government can conclusively show that the tainted evidence did not contribute to the conviction." *Alvarado-Valdez*, 521 F.3d at 342–43.

In both its case in chief and its closing argument in this case, the government placed great importance on the drug ledgers handed over to Officer Hight by Arturo Valdez. The government's attorney emphasized that the ledgers showed cocaine distribution in excess of 350 to 400 kilograms to Mr. Jackson, as well as the name of an alleged coconspirator. The government stated that these entries amount to "proof beyond a reasonable doubt" that Jackson participated in the conspiracy with Valdez. Under these circumstances, "[t]here is no way to determine whether the jury would have convicted [the defendant] purely on the basis of [the tainted] testimony or of any of the other evidence." *Id.* at 343. In

the light of the government's reliance on tainted evidence, and notwithstanding the other evidence implicating Jackson in the conspiracy, the government cannot show, under controlling precedents, that the notebooks did not contribute to the conviction. Accordingly, we must say that the trial court's error was not harmless beyond a reasonable doubt, and therefore we vacate Jackson's conviction and sentence.

V.

The final question presented is whether we remand the case to the district court for a new trial or for entry of a judgment of acquittal. The nature of the remand depends upon whether we conclude that the remaining evidence in the record is sufficient for a reasonable jury to convict Jackson when the drug ledgers are excluded. We think there is adequate other evidence to support a jury verdict of guilt. This other evidence includes a number of telephone conversations—to which we have referred earlier in this opinion—between Jackson and his alleged coconspirator Valdez regarding the sale and purchase of cocaine. The connection between Jackson and Valdez is further substantiated by photographs of the two men together. Under a review for sufficiency, this evidence must be viewed in the light most favorable to the verdict, giving "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We also observe that on appeal Jackson does not argue the insufficiency of the evidence for conviction. We conclude that the remaining evidence is adequate to support a reasonable jury's finding that Jackson conspired to possess with intent to distribute more than five kilograms of cocaine. *See United States v. Watkins*, 591 F.3d 780, 788 (5th Cir. 2009) ("Each element" of a conspiracy to possess and distribute more than five kilograms of cocaine "may be inferred from circumstantial evidence; that is, the 'agreement may be inferred from a concert of action' and '[k]nowledge

14

of a conspiracy and voluntary participation . . . may be inferred from a collection of circumstances.'") (quoting *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994) (internal citations omitted)). Accordingly, Jackson's conviction is vacated and the case is remanded for further appropriate proceedings, including an opportunity for a new trial.[7]

## VI.

We sum up: Under the general hearsay exception for business records and coconspirator statements in furtherance of a conspiracy, the notebooks alleged to contain entries of cocaine transactions involving the defendant must be authenticated in order to be admissible. We have held that the government did not adequately authenticate the notebook "drug ledgers" in this case, and that the notebooks did not bear sufficient indicia of reliability to be what they purported to be. We have thus concluded that the district court erred in admitting into evidence the notebooks as a business record or coconspirator statement in furtherance of a conspiracy.

Because the notebooks were testimonial as presented to the jury, the district court's error violated Jackson's rights under the Confrontation Clause. Given the manner in which the government relied on this inadmissible evidence in both its case in chief and its closing argument, we cannot say that the evidence did not contribute to the jury's verdict. Thus, the district court's error was not harmless beyond a reasonable doubt. Finally, we have held that the remaining evidence against Jackson is sufficient to support the conviction, and that therefore this case must be remanded for an opportunity for a new trial and such other proceedings as are appropriate.

---

[7] In the light of this conclusion, we need not address Jackson's additional grounds for appeal.

No. 09-10850

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.