**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Duane Eugene HOLLEY, Defendant-Appellant.**

**No. 72–1281
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 6, 1972.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

James M. McEwen, Tampa, Fla. (court appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Richard H. McInnis, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

The defendant, Duane Eugene Holley, was charged in a three-count indictment with embezzlement of United States postal matter in violation of 18 U.S.C.A. § 1709.[1] A jury conviction on all three counts resulted in three concurrent sentences of eighteen months. On appeal the defendant seeks reversal of his conviction by pressing upon this court an assortment of alleged errors committed by the trial court. Out of this melange we detect no error of reversible significance.

The defendant was employed as a mail distribution clerk by the United States Postal Service at the Tampa Sectional

---

1. Section 1709 provides:

Whoever, being a Postal Service officer or employee, embezzles any letter, postal card, package, bag, or mail or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or of the Postal Service; or steals, abstracts, or removes from any such letter, package, bag, or mail, any article or thing contained therein, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

Post Office in Tampa, Florida. As a result of several complaints of lost mail, postal authorities dispatched several inspectors to the Tampa facility to attempt to solve what appeared to be internal mail theft. On the evening of October 28, 1970, while observing mail distribution clerks from a galley above the main working floor, postal inspector Perkins viewed the defendant handling mail in a suspicious manner. Inspector Perkins testified that he watched the defendant bend, turn over, and shake down numerous pieces of mail. This unusual handling of mail prompted inspector Perkins to notify other postal inspectors and investigative personnel, who immediately came to the observation galley to view the defendant. The continued observation of Holley caused the postal inspectors to prepare a test letter, placing some $16.00 in an envelope and making an exact duplicate of the envelope, which contained a document describing the test letter. The envelope containing the test letter was sealed by the postal inspectors and surreptitiously placed in the stack of mail the defendant was handling. The inspectors then witnessed that when the defendant encountered the test letter, he examined it carefully, turned it over, bent it, and then stuck it between the pages of his scheme book. After transferring the scheme book to his rear pocket, the defendant clocked out for the night. Holley was proceeding to an exit area on the main floor when the postal inspectors stopped him and requested that he accompany them to their office. There the inspectors showed the defendant their credentials and read him his *Miranda* warnings, which the defendant indicated he understood. When Holley told the inspectors that he was willing to answer questions they showed him the duplicate of the test letter. After Holley denied ever having seen a letter similar to the duplicate, the inspectors asked the defendant if he had any objection to emptying his pockets. Before he could empty his pockets, he was informed by his interrogators that anything he might produce from his pockets could be used in court against him. Thereupon the defendant took four letters, including the test letter, out of his pockets. During subsequent interrogation the defendant admitted that he had been stealing mail from the Tampa Post Office for about a month, and he was then told that he was under arrest for mail theft.

On appeal, the defendant has presented five contentions allegedly justifying reversal of his conviction. First, he claims that the district court erred by not suppressing the letters and the incriminating statements taken from him by the United States postal inspectors at the interrogation. Second, the defendant claims that the trial court violated the evidentiary rule requiring production of documentary originals when it permitted government witnesses to testify as to the content of an alleged Postal Service rule prohibiting postal employees from putting mail matter into their pockets. Third, Holley asserts that the trial court erred in instructing the jury that to be guilty of embezzlement the defendant need not have removed mail matter from the post office premises. Fourth, Holley challenges the sufficiency of the evidence; and lastly, he asserts that his three eighteen-month concurrent sentences constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

We find the defendant's *Miranda* contention utterly devoid of merit. The above recitation of events surrounding the defendant's interrogation by United States postal inspectors essentially represents the findings of the district court at the suppression hearing. In support of his contention that the incriminating statements and letters were not produced voluntarily, the defendant offers to us his version of the interrogation, which differs substantially from the facts as found by the district court. In making its factual determinations the district court chose to credit the testimony of the postal inspectors, and not that of the defendant. Our examination

of the record reveals that the factual determinations of the court below concerning the defendant's in-custody interrogation are amply supported by the evidence adduced at the suppression hearing, and we certainly cannot hold that those findings are clearly erroneous. We conclude that the incriminating statements and physical evidence were produced voluntarily by the defendant after a knowing and intelligent waiver of his constitutional rights. Cf. United States v. Abeln, 6 Cir. 1965, 353 F.2d 91.

▮ In his second point of error the defendant claims that the lower court erred in allowing postal employees to testify as to the content of an alleged rule or regulation prohibiting postal workers from placing mail matter into their pockets. Whenever it is the purpose of a party to establish the terms of a writing, an evidentiary rule requires the production of the documentary original unless such production is not feasible. *See generally,* IV J. Wigmore, Evidence § 1177 et seq. (3d ed. 1940). During the defendant's trial the prosecutor sought to prove the terms of a postal regulation by means of testimonial evidence, without explaining why the writing itself could not be produced. We agree with the defendant that the admission of such testimony was error, and that the district court should have required production of the alleged rule or regulation. However, under the circumstances of this case we are disposed to treat the trial court's evidentiary miscue as harmless error under Rule 52(a), F.R.Crim.Pro. We first note that whether or not there exists a rule or regulation prohibiting postal employees from placing mail in their pockets relates only indirectly to whether or not the defendant is guilty of mail theft under section 1709. The prosecution introduced the alleged rule into evidence for the purpose of showing the defendant's criminal intent and in order to attack the defendant's principal defense. However, with respect to both purposes, the testimony was merely cumulative. The criminal intent of the defendant was substantiated by a variety of probative evidence, including the defendant's unusual handling of letters, his admission that he had been stealing mail for about a month prior to his capture, and the failure of his exculpatory explanations to square with much of the evidence. Moreover, we note that the prosecution's failure to produce the regulation in question opened the door for the defense counsel to elicit from several defense witnesses who were long-time employees of the Tampa Post Office testimony to the effect that they had never heard of the disputed regulation. Ultimately, the question of the existence of the regulation was left to the fact finder, as both the prosecution and the defense discussed the proof as to its existence in their closing arguments to the jury.[2]

2. Indeed, on appeal the existence of this regulation continues to be a disputed factual matter. Obviously the easiest way for the government to demonstrate the harmlessness of the error in admitting testimony concerning the regulation would be to quote or to cite the regulation to this court. Thus, the defendant on appeal argues essentially that if the government wants to insist on the existence of such a regulation, then the government should supply the citation and allow this court to take judicial notice of its contents. In response to the defendant's demand to "prove up—or shut up," the government can only stammer and stutter. In its brief on appeal the government once again claims that there does exist a postal service rule or regulation prohibiting postal employees from placing mail in their pockets. The government does demonstrate that such a regulation has existed in the past, *see* Post Office Manual § 331.14. However, just one month prior to the date of the offense herein, the page of the Post Office Manual containing the regulation was revised and the regulation, according to the government, was inadvertently omitted from the Manual. In addition to claiming that a printer's foolscap should not be permitted to black out Holley's misdeeds, the government asserts on appeal that the rule is so fundamental and obvious in nature that it should not require proof.

In addition, the testimony concerning the disputed regulation was merely cumulative of other evidence that tended to discredit the defendant's principal defense. The defendant attempted to exculpate himself from the mail theft charges by asserting that he had placed the letters in his pocket for the purpose of taking them to that part of the post office where damaged mail was customarily repaired ("hit-up table"), and that he then forgot about the letters as he clocked out and started to leave the building. In order to impeach the defendant and to discredit this defense, the prosecution referred to the alleged regulation prohibiting postal employees from placing mail in their pockets. However, the evidence of the alleged regulation was not the only prosecutorial evidence that tended to discredit this defense. Other postal employees testified that they had never placed mail in their pockets, that damaged mail was transferred to the hit-up table by hand and never in mail clerks' pockets, and that three of the four pieces of mail which Holley was allegedly transporting to the hit-up table for repair were not damaged in any manner. It is our conclusion that the testimony regarding the alleged regulation was cumulative evidence tending to show the defendant's criminal intent and tending to discredit his principal defense. To hold otherwise would be converting a minnow into a whale. A criminal defendant is entitled to a fair trial, but not every prosecutorial ineptitude can be magnified into a colossus mandating a reversal. Rule or no rule, regulation or no regulation, this record reeks of guilt. Accordingly, we hold that the error in admitting the challenged testimony was harmless because of its cumulative nature, see, e. g., Finnegan v. United States, 8 Cir. 1953, 204 F.2d 105, cert. denied, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347; Carlson v. United States, 10 Cir. 1951, 187 F.2d 366, cert. denied, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367, and because of other substantial evidence of the defendant's guilt. *See, e. g.,* United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795, cert. denied, 1971, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331.

■ Concerning the trial court's charge to the jury, the defendant asserts that that court committed reversible error when it instructed the jury that, to sustain a conviction under the statute, the letters allegedly embezzled by the defendant "need not be even so much as removed from the post office." In a factual setting not unlike the case *sub judice,* the Ninth Circuit approved an instruction similar to the one complained of by the defendant by stating that "[t]he principle has long obtained that a letter or package need not be removed from the post office building to consummate the offense of stealing from the mail." Kelley v. United States, 9 Cir. 1948, 166 F.2d 343, 346. This court has often recognized the need for both expansive and realistic judicial interpretations of the federal mail theft statutes in general, *see* United States v. Davis, 5 Cir., 461 F.2d 83 [June 2, 1972] ; Smith v. United States, 5 Cir. 1965, 343 F.2d 539, cert. denied, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99. And we quite recently stated with specific regard to section 1709: "The difficulties of detecting this kind of crime are very great, and the statute ought not to be construed as to substantially prevent a conviction under it." United States v. Kent, 5 Cir. 1971, 449 F.2d 751, 752. Under the circumstances of this case, we decline to interpret section 1709 in such a limited way as to thwart the defendant's conviction. Finding ourselves in agreement with the Ninth Circuit's decision in *Kelley,* we expressly approve the trial judge's instruction that a defendant in order to be guilty of embezzling mail in violation of section 1709 need not remove the mail matter from the premises of the post office.

■ Finally, we come to the defendant's last two contentions, which we dispose of summarily. Concerning the defendant's claim of insufficiency of the evidence, we think that our earlier nar-

ration of the evidence, viewed in the light most favorable to the government, demonstrates that that evidence is quite sufficient to support the jury's finding of guilt. Concerning the claim that his three eighteen-month sentences constitute cruel and unusual punishment, it is established law that this court will not review a sentence imposed by a district court upon a convicted defendant where the punishment assessed falls within the statutory limits. *See, e. g.,* Mount v. United States, 5 Cir. 1964, 333 F.2d 39, cert. denied, 379 U.S. 900, 85 S.Ct. 188, 13 L.Ed.2d 175; Herman v. United States, 5 Cir. 1961, 289 F.2d 362, cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93. In seeking to modify the severity of his punishment, the defendant's remedy lies not with this court but with the sentencing court under the provisions of Rule 35, F.R.Crim.Pro.

Having exhausted the defendant's potpourri of alleged trial court miscreancy and finding none of any stamina, we conclude that the defendant's conviction should be affirmed.