# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2025

Lyle W. Cayce
Clerk

No. 24-10243

United States of America,

*Plaintiff—Appellee*,

*versus*

Terrance Deshun Cash,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CR-256-1

_____

Before Stewart, Clement, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Terrance Cash was convicted of possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). He appeals his conviction on five grounds: the district court's response to a jury note and admission of photographs of cocaine and heroin, physical evidence of cocaine and heroin, testimony summarizing a

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

text message Cash received, and an out-of-court statement by a declarant who did not testify. Because we do not find reversible error, we AFFIRM.

## I.

## A.

Officers with the Drug Enforcement Administration ("DEA") learned from a confidential informant that a Black man driving an Alfa Romeo would be retrieving cocaine from a house on Locke Avenue in Fort Worth, Texas. Based on the information, DEA agents and officers with the Fort Worth Police Department ("FWPD") began surveilling the house. On August 8, 2023, the agents and officers saw the suspect and another man arrive to the house in an Alfa Romeo, watched as the suspect entered and later exited the house, and followed him to another location.

On August 9, 2023, the confidential informant notified DEA agents that the suspect would be moving cocaine from the Locke Avenue house again. While the officers surveilled the house, DEA Agent Rocky Ductan learned that the Alfa Romeo was in another neighborhood and drove to that location. After Ductan established surveillance and parked, the driver of the Alfa Romeo drove toward him. The driver later followed Ductan. Upon Ductan's request, officers with the FWPD conducted a stop of the Alfa Romeo and arrested the driver—identified as Ms. Davis. After her arrest, officers—excluding Ductan—interviewed Ms. Davis, searched her phone, and learned that she had been on the phone with Cash when she followed Ductan.

Back at Locke Avenue, law enforcement saw the suspect—later identified as Cash—arrive at the house in a Volkswagen Atlas and leave with a dark-colored container. DEA agents radioed FWPD Officer Harlow Jorgensen to stop the car and detain the driver, and Jorgensen attempted to conduct a traffic stop. Instead of stopping, Cash led Jorgensen on a chase

through a residential neighborhood for about five minutes before he pulled over and was arrested. During the chase, Jorgensen saw Cash throw wrapped packages of cocaine, baggies of heroin, and a flip phone out of the car. Officers later retrieved some of the discarded items from the road. After obtaining a warrant, officers searched the Locke Avenue home and retrieved cocaine, among other items.

**B.**

A grand jury in the Northern District of Texas indicted Cash with two counts of possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Cash pleaded not guilty and proceeded to a jury trial.

During the trial, the government admitted photographs of cocaine and heroin ("Exhibit Six") through Jorgenson's testimony and attempted to link the drugs in the photographs to the drugs recovered after Cash's flight. The government admitted evidence of physical cocaine and heroin ("Exhibit Ten") through Ductan's testimony and attempted to link the physical drugs to the drugs recovered after Cash's flight. Ductan also testified about a text message found on Cash's discarded phone from a Mexican cell phone number and about statements made by Ms. Davis during her interview with the FWPD.

During jury deliberations, the jury sent the court several notes. The jury foreperson asked if the jury could review Jorgensen's testimony; the district court responded that it could not reproduce the entire testimony. The jury foreperson then asked whether Jorgensen "saw [the heroin] come out" of Cash's car "or if he retrieved any" and how many packages of heroin were retrieved. The district court replied that it would review Jorgensen's testimony, and the jury responded that it wanted to see "[a]nything relating to the heroin . . . [f]rom Jorgensen." The jury then sent the court a note

asking in relevant part, "When [d]id Officer Jorgensen first see Exhibit 6 on page 8 of 11? [I]n terms of the heroin? We thought he said he did not see the block of heroin until he was on the witness stand" ("Jury Note Three").

The parties discussed how to respond outside the presence of the jury. The court believed the jury was asking when Jorgensen first saw the actual heroin at the scene, whereas the defense believed the jury wanted to know when Jorgensen first saw the picture of the heroin. The court brought the jury into the courtroom to clarify, and the jury foreperson explained they wanted to know when Jorgensen saw the heroin "[d]uring the incident, right when he first saw it. Did he see it at the crime scene, or did he see it on the witness stand?"

After excusing the jury, the court informed the parties that the court reporter searched Jorgensen's testimony for "heroin" and compiled the excerpts, and that the court intended to read the compiled excerpts to the jury in response to their question. Defense counsel objected to reading the transcripts out of context because it would be confusing, and the court overruled the objection. After the court read the excerpts to the jury, the jury foreperson said, "I think we have our answer." Fewer than twenty minutes later, the jury returned a verdict of guilty on both counts. The district court sentenced Cash to 189 months of imprisonment.

Cash timely appealed.

## II.

The government argues that Cash failed to preserve his argument as to Jury Note Three on appeal, and therefore, a plain error standard of review applies. We need not resolve whether Cash preserved his argument for appeal "because it fails even under the more rigorous abuse of discretion standard." *United States v. Martinez*, 131 F.4th 294, 315 (5th Cir. 2025).

"A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011) (quotations omitted). Even if the district court erred in admitting certain evidence, we review for harmless error. *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004).

Cash asserts that the testimony the court read detailed Jorgensen's observations of heroin during and after his pursuit of Cash but did not connect that heroin to the heroin pictured on page eight of Exhibit Six. Cash argues that the district court inserted itself into the fact-finder role and resolved any doubt the jury may have had connecting the government's picture exhibits with the evidence found on the scene.

In this circuit, "[t]he district court enjoys wide latitude in deciding how to respond to questions from a jury." *United States v. Cantu*, 185 F.3d 298, 305 (5th Cir. 1999). "Overall, we seek to determine whether 'the court's answer was reasonably responsive to the jury's question[] and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it.'" *Id.* at 306 (quoting *United States v. Mann*, 161 F.3d 840, 864 (5th Cir. 1998)). "The danger in reading excerpted testimony to the jury is that the district court will 'substitute its judgment for that of the jury, or . . . invade its province as factfinder.'" *United States v. Rose*, No. 98-10533, 1999 WL 195232, at *1 (5th Cir. Mar. 15, 1999) (per curiam) (quoting *United States v. Alonzo*, 681 F.2d 997, 1003 (5th Cir. 1982)).

Jury Note Three specifically asked when Jorgensen saw the heroin pictured in Exhibit Six on page eight. The jury later clarified that it wanted to know whether Jorgensen saw that heroin for the first time on the scene or in the courtroom. Before submitting Jury Note Three, the jury foreperson asked more generally when Jorgensen "saw [the heroin] come out" of Cash's car

"or if he retrieved any" and how many packages of heroin were retrieved. In responding to Jury Note Three, the district court provided excerpts of Jorgensen's testimony that referenced "heroin," but these excerpts did not include any reference to page eight of Exhibit Six.

Cash asserts that nothing in the record answered the question in Jury Note Three. This court has previously found a defendant's inability to point to relevant omitted testimony in the record as dispositive. *Rose*, 1999 WL 195232, at *1 ("Because the defendant can point to no omitted testimony potentially relevant to the jury's question, we find that the district court did not abuse its discretion."). However, our own review of the record compels further discussion because we located testimony from Jorgensen about page eight of Exhibit Six. *See Alonzo*, 681 F.2d at 1003 (court conducting a review of the record). Jorgensen testified that he saw the heroin pictured on page eight of Exhibit Six in person on the scene and held it, and that the picture accurately represented what he saw on the scene. This testimony did not use the word "heroin" and was thus not included in the excerpts the district court read to the jury even though it was directly relevant and responsive to Jury Note Three.

Yet even despite this omission, the excerpts were reasonably responsive to Jury Note Three. In the excerpts, Jorgensen testified that he saw Cash throw more than one bag of heroin out of his car, but he did not connect any of that heroin to the pictures in Exhibit Six. *United States v. Stowell*, 947 F.2d 1251, 1257 (5th Cir. 1991) ("There is nothing wrong in responding in a narrow fashion allowing the jury to decide if the answer is responsive."). The district court did not tell the jury that the heroin Jorgensen testified about was the heroin pictured on page eight of Exhibit Six. Rather, the district court left it up to the jury to decide whether the excerpts answered their question, and the jury foreperson told the court, "I think we have our answer." *United States v. York*, No. 94-10464, 1995 WL 71186, at *4

(5th Cir. Jan. 26, 1995) (per curiam) (finding no abuse of discretion where the jury informed the district court "that the rereading of the testimony was adequate"). The district court had also already informed the jury to "draw inferences and deductions from [the court's responses] according to the instructions [the court] gave you in the jury charge." *See Alonzo*, 681 F.2d at 1003.

In contrast to *United States v. Rivera-Santiago*—a case that Cash relies on in his briefs—the omitted testimony supported, rather than contradicted, the excerpts the district court read in response to Jury Note Three. *Compare* 107 F.3d 960, 965–66 (1st Cir. 1997) (per curiam) (finding error when the court provided part of one witness's testimony in response to a question concerning a disputed issue of fact when there was conflicting and contradictory evidence in the record as to that fact issue), *with York*, 1995 WL 71186, at *4 (finding no abuse of discretion when "[n]othing in [the witness's] testimony tended to contradict the reporter's recapitulation"). Cash's trial counsel never challenged that Jorgensen saw the heroin pictured on page eight of Exhibit Six on the scene so this fact was not in dispute. *Rose*, 1999 WL 195232, at *1 (noting that the court did not abuse its discretion when the court's selections of the excerpts "were not one-sided"). Because the omitted testimony was merely corroborative of the excerpts that the district court read to the jury, it was not significant. *See Alonzo*, 681 F.2d at 1003 (finding no error when the "review of the record discloses no significant testimony, bearing on the questions posed by the jury, which was excluded from the response to the jury's request").

Under our deferential standard of review, we cannot say that the district court abused its discretion by failing to include the omitted testimony in the excerpts. Moreover, even if the district court did err, any error was harmless because the omitted testimony corroborated the excerpts rather than contradicted them, and the jury had sufficient evidence that Jorgensen

saw the heroin on page eight of Exhibit Six on the scene. *See United States v. Infante*, 404 F.3d 376, 389 (5th Cir. 2005).

### III.

Cash challenges the district court's evidentiary rulings admitting (A) Exhibit Six and (B) Exhibit Ten into evidence. "This court reviews a district court's evidentiary decisions for an abuse of discretion." *Hicks*, 389 F.3d at 522; *United States v. Ceballos*, 789 F.3d 607, 617 (5th Cir. 2015) (applying abuse of discretion to an authentication issue).

"Authentication is a condition precedent to admissibility." *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022). A proponent's burden to authenticate evidence is low. *Ceballos*, 789 F.3d at 618. "This Court does not require conclusive proof of authenticity before allowing the admission of disputed evidence." *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989).

Under Federal Rule of Evidence 901, to authenticate an item, a proponent—in this instance, a witness with knowledge of the item—"must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a), (b). Once the proponent satisfies that low burden, "the ultimate responsibility for determining whether evidence is what its proponent says it is rests with the jury," and any alleged flaws in authentication or a break in the chain of custody go to the weight of the evidence rather than admissibility. *Ceballos*, 789 F.3d at 618 (cleaned up); *United States v. Smith*, 481 F.3d 259, 265 (5th Cir. 2007).

### A.

Cash contends the government did not properly authenticate the photographs of the drugs in Exhibit Six through Jorgensen's testimony

No. 24-10243

because Jorgensen neither took the photographs nor could recognize the objects in the pictures as the drugs he recovered from the scene.

"A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." *United States v. Okulaja*, 21 F.4th 338, 345 (5th Cir. 2021) (cleaned up). Jorgensen's testimony as to pages one through eight of Exhibit Six satisfy that low burden.[1]

Although Jorgensen did not take the pictures and was not present when the photographs were taken, neither are required to authenticate pictures when the testimony demonstrates a witness's knowledge of the items pictured. *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. Unit B 1981) (argument that a witness did not take the photographs and could not describe the conditions under which the photographs were taken "go[es] only to the evidentiary weight of" the exhibit "rather than to its admissibility"). On direct and cross-examination, Jorgensen identified the items in the images on pages one through eight of Exhibit Six as the items that he saw Cash throw out of his car during the police chase and that he held on the scene. *United States v. Duke*, 858 F. App'x 770, 772 (5th Cir. 2021) (per curiam) ("The deputy's testimony that he recalled seizing the items during the search satisfied Federal Rule of Evidence 901 . . . .").

Jorgensen also testified that the "pictures fairly and accurately represent[ed] the items that [he] saw on the scene." This court has found similar descriptions of photographs sufficient for authentication. *See, e.g.*, *United States v. Alejandro*, 354 F. App'x 124, 128 (5th Cir. 2009) (per curiam) ("The detective did not have to actually create the map, so long as he could

_____

[1] The government only sought to introduce pages one through eight of Exhibit Six.

testify as to its accurate depiction of the area surrounding the school.'"); *Okulaja*, 21 F.4th at 345 (concluding that the district court did not abuse its discretion where the witness who did not take the photographs testified that "each picture 'is what it is claimed to be'"); *cf. United States v. Winters*, 530 F. App'x 390, 395 (5th Cir. 2013) (finding that a proper foundation was not laid when the witness could not identify the objects in the photographs). Cash's trial counsel cross-examined Jorgensen regarding whether the images on pages four and five of Exhibit Six depicted the same items, and Jorgensen responded that it was possible, but he did not know because he did not take the pictures. At bottom, this questioning does not go to admissibility but rather allows the jury to assess the accuracy and relevance of the images. *Alejandro*, 354 F. App'x at 128–29 (a witness's "lack of knowledge as to the map's creation, validity, and scaling" goes to its "relevancy and genuineness as evidence").

For those reasons, we conclude that the district court did not abuse its discretion in admitting pages one through eight of Exhibit Six.

**B.**

During the trial, the government sought to introduce Exhibit Ten through Ductan's testimony. Cash argues the government did not properly authenticate Exhibit Ten because Ductan did not recover or witness the recovery of the drugs from the scene. We disagree.

Ductan testified that the physical contents of Exhibit Ten consisted of "packaging [and substances] consistent with what was around the cocaine . . . and heroin that was found" at the scene. He also described the consistency of the substances. Both the government and the district court asked Ductan whether the drugs in Exhibit Ten were the drugs he "recovered" from the scene and he responded, "Yes."

This court has found similar testimony sufficient to authenticate evidence. In *United States v. Wilson*, a law enforcement officer authenticated a sweatshirt by testifying that she observed the defendant wearing the same sweatshirt at the time of his arrest. 720 F. App'x 209, 210 (5th Cir. 2018) (per curiam). Cash attempts to distinguish *Wilson* from this case by arguing that the sweatshirt being authenticated was distinctive, the clothes had the defendant's name on them, and the testimony established a chain of custody for the clothes. But *Wilson* is squarely on point.

Ductan testified to his personal knowledge of the drugs: He identified the packages and substances in Exhibit Ten as consistent with the drugs that he observed and recovered from the scene. *Ceballos*, 789 F.3d at 617–18 ("Testimony by a witness with knowledge of the item, the item's own distinctive characteristics, and the circumstances of the item's discovery may each suffice to authenticate evidence."); *see also United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988) ("law enforcement agents who participated in the taped conversations" authenticated recordings by testifying that the "tapes contained accurate recordings of the conversations that occurred"). Although Ductan may not have seized all of the drugs from the scene, "[t]he testimony of the officer who seized the drugs [i]s *sufficient* to establish their authenticity," not necessary. *Smith*, 481 F.3d at 265 (emphasis added). Ductan also described the packaging and consistency of the drugs in Exhibit Ten in detail based on his personal knowledge. *Ceballos*, 789 F.3d at 617–18.

The DEA-7 form, which the government admitted alongside the physical heroin and cocaine, supports that Ductan had personal knowledge of the drugs in Exhibit Ten. Ductan was on the scene when FWPD officers Joe Hill and Greg Miller recovered the cocaine and heroin, and Hill and Miller transferred the drugs to Ductan. *Jimenez Lopez*, 873 F.2d at 771 (authenticating witness "testified that he personally requested exhibit 3 and received it via a California border patrol agent who [the witness] said

procured it from the magistrate's court"); *cf. United States v. Dockins*, 986 F.2d 888, 895 (5th Cir. 1993) (finding testimony insufficient to authenticate when the witness "had no knowledge, other than from reading the document, that the fingerprint card actually came from the Denver Police Department"); *Weinhoffer*, 23 F.4th at 582 (concluding that the witness's testimony was insufficient to authenticate evidence when the witness "had no personal knowledge of the terms applicable to the auction" and her memory consisted only of "what she found on the internet").

The DEA-7 form also establishes a chain of custody: It describes how the drugs went from the scene to Hill and Miller to Ductan to another officer to the DEA office and finally to the laboratory for testing.[2] Fed. R. Evid. 901(b) advisory committee's note to 1972 proposed rules (testimony from a witness with knowledge "contemplates a broad spectrum," including "testimony establishing narcotics as taken from an accused and accounting for custody through the period until trial, including laboratory analysis").

Based on the foregoing, we cannot say that the district court abused its discretion in admitting the physical cocaine and heroin into evidence.

## IV.

Cash next contends that Ductan's testimony on redirect examination—where he paraphrased a text message between Cash and a Mexican phone number—violates the best evidence rule.

The parties agree that Cash's trial counsel did not preserve this argument on appeal so we review for plain error.[3] *United States v. Coil*, 442

---

[2] Even if the chain-of-custody information in the DEA-7 form had gaps, that would go to the weight of the evidence rather than its admissibility. *Smith*, 481 F.3d at 265.

[3] Cash urges us to apply closer scrutiny because his trial counsel objected to Ductan's testimony on related grounds, namely that the testimony constituted

F.3d 912, 915 (5th Cir. 2006). Under the plain error standard, the defendant must show that (1) the district court erred, (2) the error is clear or obvious, and (3) the error affected the defendant's substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If these three conditions are met, "the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

On direct examination, Ductan testified that the officers recovered a black flip phone from the scene of the police chase. Ductan testified that the phone had one phone number "of particular interest to [him]," namely, a phone number with a Mexican country code. On cross-examination, Cash's trial counsel brought up text messages from the phone number and noted that the messages were included in a report Ductan wrote. On re-direct examination, Ductan testified that he saw a message from the phone number on Cash's flip phone. When asked what he recalled seeing in the message, Ductan replied, "It was just a message from the Mexico phone number -- I would be paraphrasing without looking at the report -- but something to the effect of good morning or hi brother, do you have the fourth coming,

───────────────

"speculation." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991) (per curiam), *abrogated in part on other grounds by Davis v. United States*, 589 U.S. 345 (2020). But Cash fails to show how his argument on appeal is related to his trial counsel's argument aside from cursorily asserting that the objection at trial "called the court's attention to the potential problems with the reliability of this evidence." *Kiva Kitchen & Bath Inc. v. Cap. Distrib. Inc.*, 319 F. App'x 316, 322 (5th Cir. 2009) (reviewing for plain error where "the [defendants] failed to object on the basis of the best evidence rule, which is the sole ground raised by them on appeal"); *cf. United States v. Lopez*, No. 94-40723, 1995 WL 727125, at *10–11 (5th Cir. Nov. 21, 1995) (concluding that an objection at sentencing that the defendant was not responsible for two loads of marijuana is related to the argument raised on appeal that the defendant should not be responsible for the marijuana because it was transported before he joined the conspiracy).

somebody is looking for it, or something like that." The government asked what Ductan thought the message meant, and Ductan responded,

> I perceived it to mean that the Mexican source of supply was trying to get in contact with Mr. Cash and was inquiring on where the four kilograms of cocaine were, and whether or not -- when he would be able to deliver it to the expected recipient of the cocaine.

Federal Rule of Evidence 1002, commonly known as the best evidence rule, provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002. "[T]he best evidence rule 'comes into play only when the terms of a writing are being established,' not when a witness's testimony is based on personal knowledge." *Kiva Kitchen & Bath*, 319 F. App'x at 322 (quoting *In re Mobilift Equip. of Fla., Inc.*, 415 F.2d 841, 844 (5th Cir. 1969)); FED. R. EVID. 1002 advisory committee's note to 1972 proposed rules ("[A]n event may be proved by nondocumentary evidence, even though a written record of it was made.").

The government did not use Ductan's testimony about the text message to prove the content of the message, namely that Cash possessed and intended to distribute four kilograms of cocaine. "[T]hat certain facts are contained in a document does not prevent an affiant from testifying as to those facts from her personal knowledge." *F.D.I.C. v. Stringer*, No. 94-10668, 1995 WL 29283, at *3 (5th Cir. Jan. 13, 1995). The defense on cross-examination elicited Ductan's personal knowledge of the text messages on the flip phone, and the government on re-direct elicited Ductan's understanding of this particular message as it pertained to Cash's relationship with the owner of the Mexican number. *United States v. Smith*, 804 F.3d 724, 730–31 (5th Cir. 2015) (finding no violation of the best evidence rule when the government did not use a ledger "to prove the terms of

No. 24-10243

underlying documents reflecting payments"); *Wealthmark Advisors Inc. v. Phx. Life Ins. Co.*, 804 F. App'x 229, 233 (5th Cir. 2020) (per curiam) (concluding that the court's admission of summaries of commissions the defendant paid to the plaintiff did not violate the best evidence rule because the summaries "were not offered to prove the truth of the factual contents in the checks or electronic transfers; they were used to prove up the balance of the commissions [the plaintiff] owed [the defendant]"); *Kiva Kitchen & Bath*, 319 F. App'x at 322–23 (finding no violation of the best evidence rule when the attorney sought to elicit testimony about the witness's personal knowledge of a website "not the authenticity of the document").[4]

For those reasons, we do not find that the district court erred by admitting Ductan's testimony.[5]

## V.

Cash argues that the district court violated the Confrontation Clause and the hearsay rule by allowing Ductan to testify about statements Ms. Davis

---

[4] *See also United States v. Fagan*, 821 F.2d 1002, 1008 n.1 (5th Cir. 1987) ("The prosecution was not trying to show the contents of the *tape,* but rather the contents of the *conversation,* and, therefore, as the Advisory Committee note suggests, the best evidence rule was inapplicable."); *In re Texas Health Enters. Inc.*, 72 F. App'x 122, 127 n.6 (5th Cir. 2003) (per curiam) (finding no abuse of discretion when a witness testified about a letter to show when the letter was sent rather than to describe the contents of the letter).

[5] Even if the district court did err, the error did not affect Cash's substantial rights. The record contained other substantial evidence of Cash's guilt, including Cash's connection to the Mexican phone number. *See United States v. Holley*, 463 F.2d 634, 637–38 (5th Cir. 1972) (concluding there was no harmless error where the witness testified to the content of a writing in violation of the best evidence rule because the testimony was cumulative and there was other substantial evidence of the defendant's guilt). Moreover, Cash does not argue that had the report containing the text message been admitted into evidence, the jury would have reached a different result. *United States v. Deason*, 965 F.3d 1252, 1266–67 (11th Cir. 2020). Had the report been admitted, it would have merely been additional evidence for the jury to consider of Cash's communications with a Mexican phone number.

made during her interview with other police officers. Cash asserts that the government failed to show that Ms. Davis was unavailable to testify, and the defense did not have the opportunity to cross-examine her. As to hearsay, Cash argues that the government used Ms. Davis's out-of-court statements to prove the truth of what she said, that Cash concealed his name and "distanced himself from the instrumentality of a crime." The parties agree that Cash did not preserve this argument on appeal so we review for plain error. *Coil*, 442 F.3d at 915.

On direct examination, Ductan testified that during one of his surveillances, a woman later identified as Ms. Davis began following him in the Alfa Romeo. Ductan testified that he notified the FWPD, who then stopped the Alfa Romeo, questioned Ms. Davis, and subsequently arrested her. Ductan testified that following her arrest, he searched her phone and learned that while she followed him, she was on the phone with Cash.

On cross-examination, defense counsel asked, "Would it be fair to say Ms. Davis picked up on you pretty quickly?" Ductan responded, "Upon me being there? Yes." Defense counsel and Ductan then engaged in the following conversation:

> Q.    And [Ms. Davis] didn't say her friend's name was Cash or Terrance? She called her friend Jason?
>
> A.    I believe so, yes.
>
> Q.    And she said, she only knew somebody by the name of Jason, and that's who she was talking about, correct?
>
> A.    Yes.

On redirect examination, Ductan clarified that he received information from other agents who spoke with Ms. Davis, and she told them that "she knew [Cash] as Jason. That Jason was an acquaintance of hers. That Jason -- the vehicle was technically hers, but Jason put the down payment on

that Alfa Romeo for her." The government asked, "does she call him Jason Cash or just Jason," and Ductan responded, "Jason Cash."

"The Sixth Amendment's Confrontation Clause provides that, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (cleaned up). The Confrontation Clause bars the admission of statements that are testimonial hearsay and made by a witness "who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54; *Smith v. Arizona*, 602 U.S. 779, 784 (2024).

To determine whether admitted evidence violated the Confrontation Clause, we ask three questions: "*First*, did the evidence introduce a testimonial statement by a nontestifying witness? *Second*, was any such statement offered to prove the truth of the matter asserted? *Third*, was the nontestifying witness available to testify, *or* was the defendant deprived of an opportunity to cross-examine him?" *United States v. Hamann*, 33 F.4th 759, 767 (5th Cir. 2022). If the answer is "yes" to each question, there is a Confrontation Clause violation. *Id.* The government only disputes the second question.

"The Confrontation Clause does not apply to out-of-court statements offered into evidence for a purpose other than establishing the truth of the matter asserted." *United States v. Kizzee*, 877 F.3d 650, 659 (5th Cir. 2017). However, "where a nontestifying witness specifically links a defendant to the crime, testimony becomes inadmissible hearsay." *Id.*

Here, Ductan did not testify that Ms. Davis said that Cash had cocaine and heroin and intended to distribute the drugs. *Cf. United States v. Jones*, 930 F.3d 366, 378 (5th Cir. 2019) (finding a Confrontation Clause violation where the officer's testimony about his conversation with a confidential

informant "pointed directly at the defendant and his guilt in the crime charged" (cleaned up)); *United States v. Sharp*, 6 F.4th 573, 581–83 (5th Cir. 2021) (finding a Confrontation Clause violation where the officer's testimony that a confidential informant told him that the defendant possessed a large amount of methamphetamine led to the clear and logical inference that the defendant was guilty of drug trafficking). Instead, Ductan testified that other agents learned from Ms. Davis that she knew Cash by the name of Jason and that Cash helped her purchase the Alfa Romeo.

The government only elicited this testimony on redirect to counter the defense's questions on cross-examination, which attempted to distinguish "Jason" from Cash and imply that Ductan conducted an inadequate investigation. *See United States v. Octave*, 575 F. App'x 533, 539 (5th Cir. 2014) (per curiam) ("The testimony here was only elicited on redirect examination after [the agent's] investigation had been attacked and for the limited purpose of showing why [the agent] conducted his investigation in a certain manner."); *cf. Hamann*, 33 F.4th at 770 ("The government has not advanced any reason for needing inculpatory evidence to bolster the credibility of its investigation. [The defendant] has never contended that the investigation was inadequate.").

For those reasons, we cannot conclude that the district court plainly erred in admitting Ductan's testimony as to Ms. Davis's statements.[6]

## VI.

Given the foregoing reasons, we AFFIRM the district court in all respects.

_____

[6] Even if the district court did err, the error did not affect Cash's substantial rights because the government presented the jury with overwhelming evidence of Cash's guilt. *Sharp*, 6 F.4th at 582–83.